PEOPLE v. RILEY

OPINION OF THE COURT

1. CRIMINAL LAW—LESSER INCLUDED OFFENSE—INSTRUCTIONS TO JURY—FAILURE TO CHARGE.

Failing to instruct the jury on the possibility of returning a verdict on a lesser included offense was not error where the court did not say in so many words that there were no lesser included offenses and where defense counsel did not request an instruction on lesser included offenses.

2. CRIMINAL LAW—PRE-TRIAL CONFRONTATION—APPEAL AND ERROR— PRESERVING QUESTION.

Defendant's failure to raise in the trial court the issue of an alleged prejudicial pre-trial lineup waived the issue where defendant had ample opportunity to raise the issue below, but chose not to.

3. CRIMINAL LAW — WITNESSES — INDORSED WITNESS — FAILURE TO PRODUCE — EXCUSABLE FAILURE.

Excusing the prosecutor's failure to produce an indorsed witness was proper where a police officer tried to locate the witness,

REFERENCES FOR POINTS IN HEADNOTES

[1]  53 Am Jur, Trial § 797.
[2]  5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[3]  58 Am Jur 2d, New Trial § 41.
[4]  17 Am Jur 2d, Continuance § 27 *et seq.*
[5]  17 Am Jur 2d, Continuance §§ 29–32.
[6–9]  21 Am Jur 2d, Criminal Law § 368.
     29 Am Jur 2d, Evidence § 371.
[8, 9]  Admissibility of evidence of showup identification as affected by allegedly suggestive showup procedures.  39 ALR3d 791.

the defendant's parents, who lived in the witness's neighborhood, testified that they had not seen the witness, and the witness's attorney did not know where the witness was.

4. CONTINUANCE—DISCRETION.

A denial of a motion for a continuance is reversible error only if it constitutes an abuse of discretion.

5. CRIMINAL LAW—CONTINUANCE—DISCRETION.

Denying a continuance to allow defendant time to locate a witness was not an abuse of discretion where the defendant did not subpoena the witness, the motion for continuance was made while trial was in progress, and there is no indication that the testimony would have been anything but cumulative.

DISSENT BY LEVIN, J.

6. CRIMINAL LAW—ILLEGAL PRE-TRIAL CONFRONTATION—APPEAL AND ERROR—FAILURE TO OBJECT.

*The issue of an illegal pre-trial identification confrontation, one in which the defendant was not allowed to have counsel, was of sufficient importance to necessitate remanding for an evidentiary hearing to determine if the people can show by clear and convincing evidence that the in-court identifications of the defendant were based on observations at the time of the crime rather than on the illegal confrontation, even though the issue of illegal confrontation was not properly preserved at the trial level.*

7. CRIMINAL LAW—EVIDENCE—ERRONEOUS ADMISSION—REVERSIBLE ERROR.

*Admission of identification testimony by three witnesses that the defendant was one of a group of robbers is, if the testimony was erroneously admitted, reversible error and not merely harmless error beyond a reasonable doubt where without the testimony the jury could have concluded that the prosecution failed to prove its case beyond a reasonable doubt.*

8. CRIMINAL LAW—IN-COURT IDENTIFICATION—ILLEGAL PRE-TRIAL CONFRONTATION—TESTIMONY SHOWING IDENTIFICATION SOURCE—PERMISSIBILITY.

*The prosecution is not allowed to show at trial that testimony regarding an illegal confrontation identification had an independent source; only a* per se *exclusionary rule as to such testimony is an effective sanction.*

9. Criminal Law—In-Court Identification—Illegal Pre-Trial Confrontation—Testimony Showing Identification Source.

    *Defendant is entitled to a new trial where witnesses testified on cross-examination that they had identified the defendant at an illegal pre-trial confrontation, unless the defendant or his attorney had knowledge of the illegal confrontation before the cross-examination testimony and, thus, could have moved for an evidentiary hearing outside the presence of the jury or unless the trial judge, when deciding on remand whether the in-court identification testimony had an independent source, is able to declare that the illegal confrontation identification testimony was harmless beyond a reasonable doubt.*

Appeal from Monroe, James J. Kelley, Jr., J. Submitted Division 1 March 9, 1971, at Detroit. (Docket No. 9720.) Decided May 21, 1971. Leave to appeal denied, 386 Mich 753.

Jimmie Lee Riley was convicted of robbery armed. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *James J. Rostash,* Prosecuting Attorney, for the people.

*Patricia Costello,* for defendant on appeal.

Before: Danhof, P. J., and McGregor and Levin, JJ.

Danhof, P. J. After a jury trial the defendant was convicted of robbery armed. MCLA § 750.529 (Stat Ann 1970 Cum Supp § 28.797). He now appeals raising four issues.

The defendant contends that the trial court erred in failing to give an instruction on lesser included offenses. Ordinarily we would summarily dispose of this type of issue on the basis that an instruction had not been requested. GCR 1963, 516.2, MCLA § 768.29 (Stat Ann 1954 Rev § 28.1052). However,

because of the Supreme Court's recent decision in *People* v. *Lemmons* (1970), 384 Mich 1, we believe that a more detailed discussion is necessary.

*Lemmons* was an armed robbery case where the trial court gave the following instruction as quoted by the Supreme Court at p 2:

> " 'There are only two possible verdicts as to each defendant. You may find the defendant, naming them individually, guilty of robbery armed or not guilty. There are no included offenses.' "

In *Lemmons* at p 3, the Supreme Court, quoting from *People* v. *Jones* (1935), 273 Mich 430, 432, said:

> " 'However, the rule does not excuse improper instructions. Here the court did more than fail to charge upon the included offenses. It affirmatively excluded them from the consideration of the jury. This was error because, under 3 Comp Laws 1929, § 17325, the jury was authorized to find the defendant guilty of a lesser offense * * * .' (The statutory section now is CL 1948, § 768.32 [Stat Ann 1954 Rev § 28.1055] )."

Under *Lemmons* and *Jones* if the trial court affirmatively excludes lesser included offenses from the jury's consideration reversible error is committed. We frankly confess that we do not understand what constitutes affirmative exclusion of lesser included offenses. In any case the trial court will inform the jury what the possible verdicts are. This surely is affirmative action and it effectively prevents the jury from bringing in any other verdict. In both *Lemmons* and *Jones* the trial court told the jury that there were no lesser included offenses. It may be that the Supreme Court intended that the use of this specific language be the distinguishing factor. We do not understand the difference be-

tween limiting the jury to certain possible verdicts, which do not include lesser included offenses, and telling the jury that there are no lesser included offenses. However, if this is the ruling of *Lemmons* we can see the distinction even if we cannot perceive the difference.

Further complicating the case is the fact that there is a line of cases which appears to be contrary to *Lemmons* and *Jones.* Two of these cases are *People* v. *Hearn* (1958), 354 Mich 468 and *People* v. *Utter* (1921) 217 Mich 74. The precise questions decided in *Hearn* and *Utter* were not identical to those decided in *Lemmons* and *Jones,* but the rationale of the cases appears directly contrary.

In *Utter,* the Court held that it was proper to instruct the jury that the defendant was either guilty of first-degree murder or not guilty. The Court held that a refusal to instruct on lesser included offenses was proper when there was no evidence to support a finding that one of the lesser included offenses had been committed. In *Hearn* the question was stated as follows:

" 'Did not the court err in refusing to charge as to included offenses, as orally requested, and in excluding consideration of the lesser offense from the jury?' "

The Court answered in the negative.

In both *Lemmons* and *Jones,* the Court relied on MCLA § 768.32 (Stat Ann 1954 Rev § 28.1055) which provides:

"Upon an indictment for any offense, consisting of different degrees, as prescribed in this chapter, the jury may find the accused not guilty of the offense in the degree charged in the indictment and may find such accused person guilty of any degree

of such offense, inferior to that charged in the indictment, or of an attempt to commit such offense."

The purpose and effect of the predecessor of this statute were explained in *Hanna* v. *People* (1869), 19 Mich 316. At common law when a person was charged with a felony he could not be convicted of a lesser included offense if the lesser offense was a misdemeanor. In discussing the effect of the statute Justice CHRISTIANCY said:

"In fact, so far as I have been informed, this section has been long and uniformly construed at the circuits as intended to remove entirely the common law restriction of the general rule, and to authorize a conviction for any substantive offense included in the offense charged, without reference to the fact that one was a felony and the other a misdemeanor; this being the only view in which the statute was needed."

Whatever the true rule is, we find that the case at bar is distinguishable from *Lemmons* and *Jones*. In this case the court did not state in so many words that there were no lesser included offenses. Furthermore, counsel for the defendant indicated on the record that he did not request an instruction on lesser included offenses. As the Court said in *Walker* v. *United States* (1969), 135 App DC 280 (418 F2d 1116, 1119):

"In general the trial judge should withhold charging on lesser included offense unless one of the parties requests it, since that charge is not inevitably required in our trials, but is an issue best resolved, in our adversary system, by permitting counsel to decide on tactics."

The defendant contends that a pretrial lineup was conducted in such an improper manner that he was denied due process of law. This issue was not

raised in the trial court and on appeal, counsel for the defendant has not pointed out any specific defects in the procedure.

In *People* v. *Childers* (1969), 20 Mich App 639, 645, 646, the Court said:

"It should be noted at the outset that the defendants' trial counsel, by waiting until the close of the prosecution's proofs to object to the admission of evidence which they should have known as subject to constitutional attack, may well have acquiesced to damage that can be undone only by granting a new trial. Yet, the state's interest in avoiding a new trial in such cases, to say nothing of its interest in an orderly trial without unexpected but avoidable delay, justifies the refusal by both trial and appellate courts to consider certain constitutional claims that are raised in an untimely manner. See, *People* v. *Wilson* (1967), 8 Mich App 651. Among these claims, we think, are those arising under *Wade* and companion cases. Thus, the procedure to be followed in raising *Wade* claims and preserving them for review is that announced in *People* v. *Heibel* (1943), 305 Mich 710, and *People* v. *Ferguson* (1965), 376 Mich 90, for raising the analogous claim of illegal search and seizure:

"(1) Where the factual circumstances constituting the illegal confrontation are known to the defendant in advance of trial, the defendant is responsible for communicating them to his lawyer and his lawyer, in turn, is responsible for making a motion to suppress in advance of trial.

"(2) Where the factual circumstances constituting the illegal confrontation are unknown to the defendant in advance of trial, or where other 'special circumstances' make a pretrial motion impossible, the motion to suppress may be made during trial.

"(3) In either event, once the claim of illegal confrontation is raised, an evidentiary hearing must be held to determine the merits of the claim, and this

hearing must be held outside the presence of the jury."

The record shows that the defendant had ample opportunity to raise this issue and chose not to do so. Therefore, we do not pass upon it.

The defendant contends that he was denied a fair trial when the trial court excused the production of an indorsed witness, who was charged with the same crime, without a showing of due diligence. This issue is manifestly frivolous. A police officer testified that he had attempted to serve the witness with a subpoena and had been unable to locate him. The defendant's parents, who lived in the same neighborhood as the witness, testified that they had not seen him recently. The witness's attorney testified that he had not seen his client recently and that he did not know where he was.

The defendant's final contention is that the trial court erred in denying his motion for a continuance, to give him time to locate a witness. The motion was made while the trial was in progress, the defendant could have subpoenaed this witness but did not do so, and there is no indication that the testimony would have been anything but cumulative.

A denial of a motion for a continuance is reversible error only if it constitutes an abuse of discretion. *People* v. *Rastall* (1969), 20 Mich App 264, *People* v. *O'Leary* (1967), 6 Mich App 115. In this case there was clearly no abuse of discretion.

Affirmed.

McGregor, J., concurred.

Levin, J. (*dissenting*). The defendant and three other men were riding together in an automobile.

The automobile was parked, and two men left the automobile and shortly thereafter two attendants at a nearby gasoline station were robbed. The occupants of the automobile were arrested soon after the robbery.

The defense at the defendant's trial was that he had remained in the automobile and was not part of the concert of action against the victims.

Shortly after the four occupants of the automobile and other persons were arrested, the victims of the crime were allowed to view them through a one-way window at a police station without a formal lineup and without compliance with the *Wade*[1] rule entitling accused persons to the aid of legal counsel at a lineup.

At the trial, one of the victims was certain of his identification of the defendant as one of the assailants. The other victim was unsure of his identification of the defendant. Another witness, who lived in the neighborhood and who saw the robbers walking back from the service station and enter the parked automobile, gave testimony incriminating the defendant[2] but could not identify him as one of the men she saw walking back from the station.

Even if there was sufficient evidence without the victims' identification testimony to justify submission of the case to the jury, it is apparent that without their testimony the jury could well have concluded that the people had failed to prove beyond a reasonable doubt that the defendant was part of the illegal concert of action.

---

[1] *United States* v. *Wade* (1967), 388 US 218 (87 S Ct 1926, 18 L Ed 2d 1149).

[2] See *People* v. *Schumacher* (1971), 384 Mich 831, remanding for a full evidentiary hearing even though there was other testimony (see *People* v. *Schumacher* [1971], 29 Mich App 594, 596) implicating the defendant; there, as here, a description of clothing like the clothing the defendant was wearing.

Although the *Wade* issue was not properly pre-
served at the trial level,[3] it is of sufficient importance
on this record[4] so that we should remand for an evi-
dentiary hearing to determine whether the people
can establish "by clear and convincing evidence"[5]
that the in-court identifications of the defendant
were based on observations at the time of the crime
rather than on the illegal confrontation identifica-
tion.[6] If the in-court identification testimony is in-
admissible, the erroneous admission of such testi-
mony at the defendant's trial cannot be said to have
been harmless beyond a reasonable doubt.

Recently, in *People* v. *Schumacher* (1971), 384
Mich 831, the Supreme Court entered an order re-
manding a case to the circuit court for an eviden-
tiary hearing to determine whether the complain-
ant's in-court identification of the defendant was of
independent origin. The Supreme Court's order
does not state the facts. They appear in our
Court's opinion, *People* v. *Schumacher* (1971), 29
Mich App 594, 596.

Schumacher had been identified through the use
of photographs and, as here, a one-way mirror. He
was not represented by counsel when he was so iden-
tified. There was no objection to the identification
procedures at the trial. Our Court acknowledged

---

[3] The record is silent as to whether the defendant was aware
of the one-way window identification before the trial. The fact
that he had been so viewed by the victims did not come out at
the preliminary examination. The defendant was represented by
assigned counsel both at the trial and on appeal.

[4] See *Rivers* v. *United States* (CA5, 1968), 400 F2d 935, and
*United States* v. *Valez* (CA8, 1970), 431 F2d 622, both holding that
a confrontation in violation of an accused person's *Wade* rights was
plain error entitling him to a new trial (*Rivers*) or an evidentiary
hearing (*Valez*) on the confrontation question even though the issue
had not been properly preserved at or before the trial. See, gen-
erally, *People* v. *Shirk* (1970), 383 Mich 180, 194; *People* v. *Degraf-
fenreid* (1969), 19 Mich App 702, 715.

[5] *United States* v. *Wade*, (fn 1), *supra*, p 240.

[6] See *People* v. *Hutton* (1970), 21 Mich App 312, 330.

that this did not preclude appellate review. We said that, nevertheless, the people are obliged to establish by "clear and convincing evidence that the in-court identification was based on observations of the suspect not connected with the identification procedures under attack." However, we affirmed Schumacher's conviction because we concluded that the record presented demonstrated that the in-court identification was not attributable to the erroneous procedures.

The significance of the Supreme Court's order in *Schumacher,* remanding for an evidentiary hearing, is that it makes clear both that failure to object at the trial level does not necessarily bar the granting of appellate relief and also that when a question regarding identification procedures is raised a full evidentiary hearing *focused* on that question will generally be required—that we ought not to attempt such a determination on a scanty, incomplete record.

It may appear at such an evidentiary hearing that the defendant is entitled to a new trial for another reason. During cross-examination of witnesses the fact that the victims had viewed and identified the defendant at the illegal confrontation was brought out in the presence of the jury. This testimony was inadmissible because of *Wade;* under *Gilbert* v. *California* (1967), 388 US 263, 273 (87 S Ct 1951, 18 L Ed 2d 1178), the people are not entitled to an opportunity to show that this testimony (regarding the illegal confrontation identification) had an independent source. In *Gilbert,* the United States Supreme Court declared at p 273 (87 S Ct 1957, 18 L Ed 2d 1186):

"Only a *per se* exclusionary rule as to such testimony can be an effective sanction to insure that law enforcement authorities will respect the accused's

constitutional right to the presence of his counsel at
the critical lineup."

Accordingly, unless it appears on remand that the
defendant or his attorney had knowledge of the il-
legal confrontation before the cross-examination
testimony just mentioned (see fn 3), knowledge
which would have enabled the defendant to obtain,
outside the presence of the jury, an evidentiary
hearing as to the illegal confrontation before any in-
court identification testimony—thereby avoiding re-
vealing to the jury that the defendant had been iden-
tified at the illegal confrontation—a new trial
should be ordered unless, as set forth in *Gilbert,* the
trial judge is able to declare a belief that the illegal
confrontation identification testimony was harmless
beyond a reasonable doubt. Such a declaration of
harmlessness could, of course, be made only if it is
decided on remand that the in-court identifications
of the defendant were based on observations at the
time of the crime, not on the illegal confrontation
identification. This because the exclusion on re-
mand of the in-court identification testimony would
leave insufficient admissible evidence to permit a
declaration beyond a reasonable doubt that the ille-
gal confrontation identification testimony did not
contribute to the defendant's conviction.[7]

---

[7] See *Chapman* v. *California* (1967), 386 US 18, 23, 24 (87 S Ct
824, 828; 17 L Ed 2d 705, 710, 24 ALR3d 1065), *reh den* 386 US 987
(87 S Ct 1283, 18 L Ed 2d 241).